IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | 1:11-CR-48-2 |
| | ) | |
| GABRIEL MARTIN, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Catherine C. Eagles, District Judge.

The defendant, Gabriel Martin, has filed a motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A), asking the Court to reduce his sentence to time served. Mr. Martin is serving a substantial sentence for multiple violent and serious offenses. Even considering his significant evidence of rehabilitation, his good release plan, his history, and his age when he committed the crimes of conviction, the § 3553(a) factors do not support immediate release. His motion for a sentence reduction to time served will be denied and his motion will otherwise be denied without prejudice.

I.   **Procedural History**

Mr. Martin is serving a 288-month sentence for firearm offenses arising from multiple armed robberies. Doc. 86. In September 2021, Mr. Martin filed the pending motion for compassionate release, arguing that statutory sentencing changes for successive § 924(c) convictions constitute extraordinary and compelling circumstances supporting a reduction in his sentence to time served. Doc. 174, *as supplemented* Doc.

176. The Court appointed counsel, ordered the probation office to file a supplemental report, and set a briefing schedule. Briefing is now complete.

## II. Crimes of Conviction and Sentencing

In July and August 2010, in the span of roughly four weeks, Mr. Martin and a co-defendant robbed two convenience stores, robbed a bank, and attempted to rob another convenience store. Doc. 152 at ¶¶ 14–17.[1] During each crime, Mr. Martin brandished an assault rifle. *Id.*

The first robbery occurred on July 29, 2010, when Mr. Martin, carrying an assault rifle, approached a store clerk in the parking lot of a Kangaroo Express in Sanford. *Id.* at ¶ 14. He forced the clerk into the store, produced a bag, and demanded money. *Id.* After taking $80, he escaped in a vehicle driven by the co-defendant. *Id.*

On August 11, 2010, Mr. Martin attempted to rob a convenience store and successfully robbed another. First, Mr. Martin, dressed in all black and wearing a black ski mask and goggles, entered a Kangaroo Express in Sanford carrying a rifle. *Id.* at ¶ 15. The store clerk hid behind the cigarette cage while Mr. Martin walked around the store. *Id.* Mr. Martin left the store without saying anything or making any demands. *Id.*

Later that day, Mr. Martin, wearing a ski mask, entered another Kangaroo Express in Sanford and pointed an assault rifle at the store clerk behind the cash register, yelling "give me the money, give me the money!" *Id.* at ¶ 16. He took $101 and, again, escaped in a vehicle driven by his co-defendant. *Id.*

---

[1] The Court adopted the presentence report, found at Doc. 152, without change. *See* Doc. 101 at 4.

Finally, on August 27, 2010, Mr. Martin and his co-defendant, both wearing masks and armed with assault rifles, entered a bank in Sanford. *Id.* at ¶ 17. His co-defendant shouted, "hands up, don't move, or we'll shoot!" and "no cops or I swear to God, we'll kill you guys!" *Id.* As his co-defendant counted down from 40, Mr. Martin, carrying an assault rifle at his side, went from teller to teller putting money in a pillowcase. *Id.* After taking $10,666, he and his co-defendant escaped. *Id.* He was arrested two days later during a traffic stop. *Id.* at ¶ 18.

Mr. Martin was indicted in February 2011. Doc. 1. In a superseding indictment returned in May 2011, he was charged with possession of a firearm by a felon, two counts of Hobbs Act robbery, one count of attempted Hobbs Act robbery, one count of bank robbery, one count of armed bank robbery, and four counts of brandishing a firearm in connection with a crime of violence. Doc. 29.[2]

---

[2] Specifically: Because Mr. Martin had previously been convicted of a felony and possessed an assault rifle during each robbery and attempted robbery, Count One charged possession of a firearm by a felon in violation of 18 U.S.C. § 922(g)(1) and § 924(a)(2). Doc. 29 at 1. Based on the July 29, 2010, robbery, Count Two charged interference with commerce by robbery, in violation of 18 U.S.C. § 1951(a), and Count Three charged carrying and using, by brandishing, a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A). *Id.* at 1–3. Stemming from the August 11, 2010, attempted robbery, Count Four charged interference with commerce by robbery, in violation of 18 U.S.C. § 1951(a), and Count Five charged carrying and using, by brandishing, a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A). *Id.* at 3–4. As a result of the August 11, 2010, robbery, Count Six charged interference with commerce by robbery, in violation of 18 U.S.C. § 1951(a), and Count Seven charged carrying and using, by brandishing, a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A). *Id.* at 4–5. Finally, based on the August 27, 2010, robbery, Count Eight charged bank robbery, in violation of 18 U.S.C. § 2113(a), Count Nine charged armed bank robbery, in violation of 18 U.S.C. § 2113(a) and (d), and Count Ten charged carrying and using, by brandishing, a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A). *Id.* at 5–7.

In August 2011, Mr. Martin pled guilty pursuant to a plea agreement to two counts of brandishing a firearm in connection with a crime of violence, one related to the July 29, 2010, convenience store robbery (Count Three) and the other to the August 27, 2010, bank robbery (Count Ten). Doc. 41; Minute Entry 08/08/2011. The government agreed to dismiss the remaining counts. Doc. 41 at ¶ 5a. Under the law at the time, the first count carried a statutory mandatory minimum sentence of 84 months (seven years), and the second count triggered a 300 month (25 year) mandatory minimum consecutive sentence. 18 U.S.C. § 924(c) (2006). The statutory maximum on each count was, and is, not more than life. Doc. 152 at ¶ 45; 18 U.S.C. § 924(c).

The sentencing guidelines suggested a sentence for the § 924(c) crimes at the statutory minimum. Thus, the guideline suggestion for Mr. Martin's sentence was 7 years plus 25 years, or 384 months. Doc. 152 at ¶ 46. The government filed a motion asking the Court to reduce the sentence for substantial assistance. Doc. 79. The defendant asked the Court to vary further below the statutory minimums based on other § 3553(a) factors. Doc. 101 at 28.

The Court granted the government's motion based on § 3553(e), finding the government's suggested 25% reduction to be appropriate, and sentenced Mr. Martin to a total of 288 months of imprisonment, *i.e.,* 24 years, [3] followed by five years of supervised release. Doc. 86 at 2–3. The Court denied the request for an additional reduction based

---

[3] Specifically, the Court imposed consecutive sentences of 63 months on the brandishing count associated with the July 29, 2010, robbery and 225 months for the brandishing count associated with the August 27, 2010, robbery. Doc. 86 at 2.

4

on § 3553(a) factors, finding that it did not have that authority under binding precedent and that even if it had the authority, it would not reduce the sentence further "given the nature of the[] offenses." Doc. 101 at 28.

Mr. Martin appealed his sentence, arguing that the district court abused its discretion by failing to consider relevant § 3553(a) statutory factors when determining whether it should reduce his sentence further than the reduction supported by § 3553(e). *United States v. Martin*, 496 F. App'x 336, 337 (4th Cir. 2012). The appeal was unsuccessful. *Id.* at 338.

### III. Other Relevant Facts

Mr. Martin was 19 years old when he committed these robberies. Doc. 152 at 2, ¶¶ 14–17. At the time, he was on probation for crimes he committed when he was 17 years old: two drug-related misdemeanor offenses and felony indecent liberties with a child. *Id.* at ¶¶ 30–32.

Mr. Martin is now 30 years old. *Id.* at 2. He is presently scheduled for release in September 2032. *See Find an Inmate*, FED. BUREAU OF PRISONS, https://www.bop.gov/inmateloc/ (last visited Mar. 2, 2022). While in prison, Mr. Martin has completed 471 hours of educational courses. Doc. 177 at 2. He reports without contradiction that he is currently taking classes at a university to obtain his bachelor's degree. Doc. 176 at 2. Mr. Martin is on a work detail, Doc. 174-4 at 2, and has had numerous assignments while incarcerated. Doc. 177 at 3. He has had one disciplinary infraction for refusing to obey an order, which happened in 2012 shortly after he began serving his sentence. Doc. 177 at 2. As evidence of rehabilitation, Mr. Martin notes his

5

"genuine religious conversion," which has motivated him to "reject[] his former vocation and lifestyle." Doc. 174 at 19.

If released, Mr. Martin plans to live with his mother and stepfather in North Carolina. *Id.* at 22. The probation office conducted a home assessment and found it to be an acceptable residence. Doc. 177 at 1. Mr. Martin has a firm job offer from his stepfather as a carpenter apprentice and transportation to and from the job. Doc. 174-3. He plans to participate in a religious community and, long term, wants to counsel and mentor at-risk youth. Doc. 174 at 21. He submitted multiple letters from family and friends pledging support upon his release from prison. Doc. 174–2.

## IV. The First Step Act Amends § 924(c)

In 2018, Congress passed the First Step Act, which, among other things, amended § 924(c) so that the 25-year mandatory minimum for a second or subsequent offense applies only if the offense occurs after a prior § 924(c) conviction has become final. First Step Act, Pub. L. No. 115-391, § 403(a), 132 Stat. 5194, 5221–22 (2018); *United States v. Jordan*, 952 F.3d 160, 171 (4th Cir. 2020). The changes to this provision of the First Step Act do not apply retroactively. *Jordan*, 952 F.3d at 174.

## V. Discussion

Courts do not have unfettered jurisdiction or discretion to modify criminal sentences. *See United States v. Goodwyn*, 596 F.3d 233, 235–36 (4th Cir. 2010) ("The law closely guards the finality of criminal sentences against judicial change of heart.") (cleaned up). A court may modify a sentence only when a provision in the Federal Rules of Criminal Procedure or a statute expressly permits it to do so. *See* 18 U.S.C. § 3582(c).

6

Section 3582(c)(1)(A), often called the "compassionate release" provision, is one such statutory provision.

In order for a sentence reduction under § 3582(c)(1)(A) to be appropriate, the movant must satisfy the administrative exhaustion requirement, when invoked by the government. *See United States v. Muhammad*, 16 F.4th 126, 130 (4th Cir. 2021). Mr. Martin requested a reduction in sentence from the warden of FCI Gilmer, which was denied in December 2020. Doc. 180-1 at 8. The government agrees that Mr. Martin has satisfied the exhaustion requirement. Doc. 180 at 6 n.3.

The statute also requires that extraordinary and compelling reasons warrant such a reduction, that the reduction is consistent with applicable policy statements issued by the Sentencing Commission, and that the § 3553(a) sentencing factors merit a reduction. *See United States v. McCoy*, 981 F.3d 271, 275 (4th Cir. 2020).[4] The facts relevant to these requirements overlap a fair bit, *United States v. Newell*, No. 13-CR-165-2, 2021 WL 3269650, at *6 n.28 (M.D.N.C. July 30, 2021), and "[d]ecisions about whether a particular defendant's sentencing factors support release are made in light of his specific extraordinary and compelling reasons, not separate from those reasons." *United States v. Beck*, No. 13-CR-186-5, 2021 WL 260402, at *4 (M.D.N.C. Jan. 26, 2021).

---

[4] The Sentencing Commission has not yet adopted any policy statement applicable to motions filed directly by defendants. The Court considers the old policy statement applicable to motions brought by BoP as helpful but non-binding guidance. *See McCoy*, 981 F.3d at 282 n.7.

Defendants serving stacked § 924(c) sentences are not automatically entitled to a sentence reduction under § 3582(c)(1)(A), and "not *all* defendants convicted under § 924(c) should receive new sentences." *McCoy*, 981 F.3d at 287. But on a "case-by-case basis," the change in that sentencing law, combined with other factors, can be extraordinary and compelling reasons warranting such a reduction. *See id.* at 285–86;[5] *United States v. Curry*, No. 05-CR-282-1, 2021 WL 2644298, at *4 (M.D.N.C. June 25, 2021). The individualized assessment can include consideration of, for example, a defendant's age at the time of the crimes, rehabilitation, length of sentence served, and institutional record. *See McCoy*, 981 F.3d at 285–86; *Curry*, 2021 WL 2644298, at *4–6.

If Mr. Martin were sentenced today for only the two crimes to which he pled guilty, he would be subject to a seven-year mandatory minimum sentence instead of a 25-year mandatory minimum sentence for the second § 924(c) conviction. Thus, the statutory minimum penalty for his two § 924(c) convictions would be 14 years rather than 32 years. Consistent with the government's § 3553(e) motion, an otherwise appropriate sentence would presumably have been reduced by 25% for substantial assistance.

---

[5] The Tenth and Sixth Circuits have agreed with the Fourth Circuit about the non-retroactive changes to § 924(c). *See United States v. Maumau*, 993 F.3d 821, 837 (10th Cir. 2021); *United States v. Owens*, 996 F.3d 755, 762–64 (6th Cir. 2021). Other circuits disagree. *See United States v. Crandall*, No. 20-3611, 2022 WL 385920, at *3 (8th Cir. Feb. 9, 2022); *United States v. Thacker*, 4 F.4th 569, 574–75 (7th Cir. 2021); *United States v. Andrews*, 12 F.4th 255, 261 (3d Cir. 2021).

8

But that is only one possible hypothetical result. Mr. Martin did not and does not contest his guilt to the charged crimes,[6] and his plea agreement and resulting sentence took his guilt of all those crimes into account. It is far from certain that the government would have offered the same plea agreement if the law then were the same as it is now. These crimes were violent and serious. In the span of a month-long spree, he committed one attempted armed robbery and three armed robberies, threatening multiple people with an assault rifle and putting their lives at risk, Doc. 152 at ¶¶ 14–17, all while he was on probation for a felony. *Id.* at ¶ 31.[7]

And even if the government offered that same agreement, the Court might not have imposed only the minimum required sentence. The presentence report covered each of the crimes charged and the sentencing court looked at all of Mr. Martin's relevant conduct in determining an appropriate sentence. *See United States v. Jones*, 31 F.3d 1304, 1316 (4th Cir. 1994) ("The defendant need not be convicted of the charges constituting relevant conduct for him to still be held accountable for them."). The statute then, as now, authorized a substantially longer sentence. And the Court's comments at

---

[6] The details of those crimes were set forth in the presentence report, which the court adopted as findings of fact, *see supra* n.1, and Mr. Martin had no objections to the report. Doc. 101 at 4.

[7] Under today's laws, if Mr. Martin was convicted of all the crimes charged, he would be facing three mandatory § 924(c) sentences for the brandishing counts associated with the three robberies, totaling 21 years minimum, plus additional non-mandatory time under the sentencing guidelines for the robberies and the felon-in-possession count. Well after Mr. Martin's case was final, the Fourth Circuit held that an attempted Hobbs Act robbery is not a crime of violence and would not support a § 924(c) conviction. *See United States v. Taylor*, 979 F.3d 203, 210 (4th Cir. 2020), *cert. granted*, 141 S. Ct. 2882 (2021).

9

sentencing expressed no doubt or regret over the length of the sentence required at the time, affirmatively concluding the sentence was appropriate based on the violent nature of these crimes. Doc. 101 at 28.[8] This is different from *McCoy*, where the judge at the original sentencing hearing "alluded to the inappropriate nature of the 'stacked' penalties." *McCoy v. United States*, No. 2:03-CR-197, 2020 WL 2738225, at *5 (E.D. Va. May 26, 2020), *aff'd*, 981 F.3d 271 (4th Cir. 2020).

The sentencing court did not reluctantly impose a mandatory minimum sentence; rather, it considered the facts and stated that Mr. Martin's 288-month sentence was appropriate. Based on the facts—not the mandatory sentences or the guideline range—the parties and sentencing court considered the plea agreement and the penalties it contemplated to produce a sentence that was "sufficient but not greater than necessary." 18 U.S.C. § 3553(a).

Mr. Martin has an impressive record of rehabilitation, as the government acknowledges. Doc. 180 at 12; *see McCoy*, 981 F.3d at 286 n.9 (noting successful rehabilitative efforts are "one among other factors under § 3582(c)(1)(A)(i)" that support finding extraordinary and compelling reasons to grant relief).[9] He has completed 471

---

[8] *See, e.g.*, *United States v. Smith*, No. 21-4372, 2022 WL 205676, at *1 (4th Cir. Jan. 24, 2022) (per curiam) (reflecting sentence of 168 months for one robbery and brandishing); *United States v. Smith*, 854 F. App'x 542, 542 (4th Cir. 2021) (per curiam) (reflecting sentence of 113 months for § 924(c) brandishing during a robbery and possession of stolen firearms). While these and other cases cannot be compared directly to Mr. Martin's, they show that sentences for robberies involving firearms often exceed statutory minimums in this district.

[9] While rehabilitation may be considered in the extraordinary and compelling reasons analysis, Congress has specified that "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason" for sentence reduction. 28 U.S.C. § 994(t).

10

hours of educational courses, Doc. 177 at 2, and reports taking university classes. Doc. 176 at 2. Since his incarceration in 2012, Mr. Martin has had only one minor disciplinary infraction and it was many years ago. Doc. 177 at 2. He has also worked in a number of BOP work assignments throughout his incarceration. *Id.* at 3. He has family support and a solid release plan, with acceptable housing provided by family and a firm job offer from his stepfather. Doc. 174-2; Doc. 174-3; Doc. 177 at 1.

Even taking these facts into account, the Court is not satisfied that extraordinary and compelling reasons exist for a sentence reduction to time served or that the § 3553(a) factors support immediate release. *See United States v. High*, 997 F.3d 181, 186 (4th Cir. 2021). A time-served sentence would barely cover the two mandatory consecutive seven-year sentences required under today's law, less the reduction for substantial assistance.[10] It would also not account for his criminal history, the two underlying robberies, the third armed robbery, the attempted armed robbery, and the illegal firearm possession. Even considering Mr. Martin's credible and substantial evidence of rehabilitation, his good release plan, his history, and his age when he committed the crimes of conviction, reducing his sentence to time served would not reflect the seriousness of his offenses, provide just punishment, deter similar conduct, or show respect for the law.

---

[10] This case is again distinguishable from *McCoy*, where the defendants had served between 17 and 25 years in prison when their sentences were reduced to time served. 981 F.3d at 286; *see also Newell*, 2021 WL 3269650, at *8 (refusing to reduce robbery sentence to time served, in part because "[t]hat is barely longer than the mandatory seven-year minimum required for . . . the brandishing count."); *id.* at *13 (similar conclusion as to different defendant).

11

To the extent Mr. Martin asks for his sentence to be reduced to something less than his current sentence but more than time served, the Court will deny the motion without prejudice. Rather than decide now whether a sentence reduction is appropriate and, if so, the extent of the reduction, the Court concludes it is better to deny the motion without prejudice to a renewed motion in a few years, when Mr. Martin is closer to serving an appropriate sentence. *See United States v. Hancock*, No. 06-CR-206-2, 2021 WL 848708, at *4–6 (M.D.N.C. Mar. 5, 2021), *aff'd*, No. 21-7393 (4th Cir. Mar. 1, 2022) (denying compassionate release motion to reduce defendant's § 924(c) stacked sentences without prejudice to later renewal); *United States v. Berry*, No. 1:05-CR-118, 2021 WL 4310598, at *5 (M.D.N.C. Sept. 22, 2021) (same).

This approach has many benefits. It is likely the case law will develop to provide judges with more direction and that developing conflicts between and among the Courts of Appeals on the scope of a § 3582(c)(1)(A) motion may be resolved. And the Court may by then have guidance from the Sentencing Commission on how to assess these motions filed by defendants, as contemplated by Congress. *See McCoy*, 981 F.3d at 284 (noting that when the Sentencing Commission enacts guidance "courts will be required to ensure that any sentence reductions granted on defendants' motions are consistent with that guidance"). The record will show whether Mr. Martin has continued his positive rehabilitation efforts and avoided further disciplinary sanctions.

## VI. Conclusion

The compassionate release statute is appropriately invoked only in unusual cases or, as the Fourth Circuit put in in *McCoy*, the "most grievous cases." 981 F.3d at 286. It

12

should not become a vehicle for wholesale and repeated reconsideration of sentences in violation of the general rule of finality. *See Goodwyn*, 596 F.3d at 235. Mr. Martin committed multiple serious and violent offenses for which he is serving a long but earned sentence. Because the § 3553(a) factors do not support immediate release, his motion for a sentence reduction to time served will be denied and his motion will otherwise be denied without prejudice.

It is **ORDERED** that the defendant's motion to reduce sentence, Doc. 174, is **DENIED**.

This the 9th day of March, 2022.

_____
UNITED STATES DISTRICT JUDGE