IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | 1:11-CR-48-2 |
| | ) | |
| GABRIEL ELIJAH MARTIN, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Catherine C. Eagles, Chief District Judge.

The defendant-inmate, Gabriel Martin, is serving a 24-year sentence for multiple violent robberies and firearm crimes. Mr. Martin seeks a sentence reduction pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) based on a non-retroactive statutory change in the length of stacked sentences for 18 U.S.C. § 924(c) offenses. This intervening change in law has resulted in a gross disparity between Mr. Martin's sentence as imposed and one that would likely be imposed under current law. Under the Sentencing Commission's applicable policy statement and Fourth Circuit case law, this gross disparity constitutes an extraordinary and compelling circumstance. After weighing the § 3553(a) factors, the Court, in its discretion, will grant the motion in part and reduce Mr. Martin's sentence to 15 years.

I.    **Overview**

In 2011, Mr. Martin was indicted in a ten-count superseding indictment for several robberies and associated firearms charges, Doc. 29, and he later pled guilty to two counts of brandishing a firearm during and in relation to a crime of violence in violation of 18

U.S.C. § 924(c)(1)(A)(ii), pursuant to a written plea agreement. Minute Entry 08/08/2011; Doc. 41. In exchange, the government agreed not to oppose dismissal of the remaining eight counts. Doc. 41 at ¶ 5(a).

The law at the time required a mandatory minimum sentence of seven years on the first § 924(c)(1)(A)(ii) conviction and a consecutive mandatory minimum sentence of 25 years on the second § 924(c) conviction. 18 U.S.C. § 924(c)(1)(C) (2006) (amended 2018). Because of this stacking provision, Mr. Martin faced a mandatory minimum prison sentence of 32 years. *See* Doc. 101 at 4–5; Doc. 152 at 19. This was also the sentence suggested by the Sentencing Guidelines. Doc. 101 at 4–5; Doc. 152 at 19.

Upon consideration of a motion by the government and as authorized by statute, the Court reduced the sentence by 25%, Doc. 101 at 27, and imposed a total sentence of 288 months (24 years) imprisonment: 63 months on the first § 924(c) count and 225 months on the second § 924(c) count, to run consecutively. Doc. 86 at 2. Consistent with the plea agreement, the Court dismissed the remaining eight counts. *Id.* at 1. The Fourth Circuit affirmed Mr. Martin's sentence on appeal. *United States v. Martin*, 496 F. App'x 336, 337 (4th Cir. 2012).[1]

In 2018, Congress passed the First Step Act, which, among other things, amended the stacking provisions of § 924(c) so that the 25-year mandatory minimum for a second or subsequent offense applies only if the offense occurs after a prior § 924(c) conviction has become final. First Step Act, Pub. L. No. 115-391, § 403(a), 132 Stat. 5194, 5221–22

---

[1] For more details about the procedural history and underlying facts, *see* Doc. 182.

(2018); *see United States v. Jordan*, 952 F.3d 160, 171 (4th Cir. 2020). In situations where a second § 924(c)(1)(A)(ii) offense occurs before the first conviction becomes final, the second sentence now carries only a seven-year mandatory minimum sentence.[2] 18 U.S.C. § 924(c)(1)(A)(ii). The changes in this provision of the First Step Act do not apply retroactively. *Jordan*, 952 F.3d at 163.

In September 2021, after completing over ten years of his sentence, Mr. Martin moved for compassionate release. Doc. 174. He contended that the First Step Act sentencing change for successive § 924(c) convictions constituted extraordinary and compelling circumstances and supported a reduction in his sentence to time served. *Id.* at 13–16, 23, *as supplemented* Doc. 176. A few months later, the Court denied the motion, finding, *inter alia*, that the § 3553(a) factors did not support a time-served sentence. Doc. 182 at 13. But the denial was without prejudice; the Court noted that developing case law and the enactment of an applicable policy statement by the Sentencing Commission could impact its analysis and decision. *Id.* at 12.

Mr. Martin filed the present motion on September 13, 2024, Doc. 189, relying on the new policy statement enacted by the Sentencing Commission. U.S.S.G. § 1B1.13. He again identifies the statutory sentencing change for successive § 924(c) offenses, his strong evidence of rehabilitation, and his relative youth at the time he committed the offenses as grounds for a sentence reduction, Doc. 189 at 3–10, and he asks the Court to

---

[2] The sentence must still run consecutively with other convictions. 18 U.S.C. § 924(c)(1)(D).

consider the conditions of his confinement. *Id.* at 5–6. He asks the Court to reduce his sentence to time served. Doc. 193 at 14; Doc. 195 at 4.

The Court appointed Mr. Martin counsel and set a briefing schedule. Text Order 10/02/2024. The probation office filed an updated supplemental report about Mr. Martin's disciplinary, educational, and work record. Doc. 191. Mr. Martin filed a supplemental brief. Doc. 193. The government filed a response, Doc. 194, and Mr. Martin filed a reply brief. Doc. 195. The Court has considered the entire record.

## II.     Crimes of Conviction and Sentencing

In July and August 2010, in the span of roughly four weeks, Mr. Martin and a co-defendant robbed two convenience stores and one bank, and they attempted to rob another convenience store. Doc. 152 at ¶¶ 14–17. During the commission of each crime, Mr. Martin brandished an assault rifle. *Id.*

The first robbery occurred on July 29, 2010. Mr. Martin, carrying an assault rifle, approached a store clerk in the parking lot of a Kangaroo Express in Sanford, North Carolina. *Id.* at ¶ 14. He forced the clerk into the store, produced a bag, and demanded money. *Id.* After taking $80, he escaped in a vehicle driven by the co-defendant. *Id.*

On August 11, 2010, Mr. Martin robbed one convenience store and attempted to rob another. *Id.* at ¶ 15–16. First, Mr. Martin, dressed in all black and wearing a black ski mask and goggles, entered a Kangaroo Express in Sanford carrying a rifle. *Id.* at ¶ 15. The store clerk hid behind the cigarette cage while Mr. Martin walked around the store. *Id.* Mr. Martin left the store without saying anything or making any demands. *Id.* Later that day, Mr. Martin, wearing a ski mask, entered another Kangaroo Express in Sanford

and pointed an assault rifle at the store clerk behind the cash register, yelling "give me the money, give me the money!" *Id.* at ¶ 16. He took $101 and, again, escaped in a vehicle driven by his co-defendant. *Id.*

Finally, on August 27, 2010, Mr. Martin and his co-defendant, both wearing masks, entered a bank in Sanford. *Id.* at ¶ 17. His co-defendant shouted, "hands up, don't move, or we'll shoot!" and "no cops or I swear to God we'll kill you guys!" *Id.* As his co-defendant counted down from 40, Mr. Martin, carrying an assault rifle at his side, went from teller to teller putting money in a pillowcase. *Id.* After taking $10,666, he and his co-defendant escaped. *Id.* He was arrested two days later during a traffic stop. *Id.* at ¶ 18.

Mr. Martin was indicted in February 2011. Doc. 1. In a superseding indictment returned in May 2011, he was charged with one count of possession of a firearm by a felon (Count One), two counts of Hobbs Act robbery (Counts Two and Six), one count of attempted Hobbs Act robbery (Count Four), one count of bank robbery (Count Eight), one count of armed bank robbery (Count Nine), and four counts of brandishing a firearm in connection with a crime of violence (Counts Three, Five, Seven, and Ten). Doc. 29.

In August 2011, Mr. Martin pled guilty pursuant to a written plea agreement to two counts of brandishing a firearm in connection with a crime of violence, one related to the July 29, 2010, convenience store robbery (Count Three) and the other to the August 27, 2010, bank robbery (Count Ten). Doc. 41 at ¶ 2; Minute Entry 08/08/2011; Doc. 29 at 2–3, 6–7. In exchange for Mr. Martin's guilty plea, the government agreed to seek dismissal of the remaining counts. Doc. 41 at ¶ 5(a). Under the law at the time, the first

5

count carried a statutory mandatory minimum sentence of 84 months (seven years), and the second count triggered a 300-month (25-year) mandatory minimum consecutive sentence. 18 U.S.C. § 924(c) (2006) (amended 2018); Doc. 152 at ¶ 45. The statutory maximum on each count was, and is, life. 18 U.S.C. § 924(c); Doc. 152 at ¶ 45.

The sentencing guidelines suggested a sentence at the statutory minimum. Doc. 152 at 19; *see* U.S.S.G. § 2K2.4(b). Thus, the guideline suggestion for Mr. Martin's sentence was seven years plus 25 years, or 32 years (384 months) total. Doc. 152 at ¶ 46.

The government filed a motion asking the Court to reduce the sentence for substantial assistance. Doc. 79. The defendant asked the Court to vary further below the statutory minimums based on other § 3553(a) factors. Doc. 80 at ¶ 11; Doc. 101 at 22, 28.

The Court granted the government's motion based on § 3553(e), finding the government's suggested 25% reduction to be appropriate, and sentenced Mr. Martin to a total of 288 months (24 years) of imprisonment followed by five years of supervised release.[3] Doc. 86 at 2–3; Doc. 101 at 27–28, 30. The Court denied the request for an additional reduction based on § 3553(a) factors, finding that it did not have that authority under binding precedent and that even if it had the authority, it would not reduce the sentence further "given the nature of the[] offenses." Doc. 101 at 28. Mr. Martin appealed his sentence, and the Fourth Circuit affirmed. *United States v. Martin*, 496 F. App'x 336, 337 (4th Cir. 2012).

---

[3] The undersigned presided at Mr. Martin's sentencing hearing. Doc. 101 at 1.

## III.    Other Relevant Facts

Mr. Martin was 19 years old when he committed these robberies.  Doc. 152 at 2, ¶¶ 14–17.  At the time, he was on probation for crimes he committed when he was 17 years old:  two drug-related misdemeanor offenses and one felony indecent liberties with a child offense.  *Id.* at ¶¶ 30–32.

Mr. Martin is now 33 years old.  *Id.* at 2 (listing his date of birth as June 5, 1991). He has served about 13 years in prison.  Doc. 194-1 at 4.[4]

While in prison, Mr. Martin has completed 528 hours of educational courses, Doc. 191 at 3, and he has taken college courses through Ohio University.  Doc. 193-1.  He is on a work detail and has held numerous work assignments while incarcerated.  Doc. 191 at 2.  He has only had one disciplinary infraction, which was for refusing to obey an order in 2012, shortly after he began serving his sentence.  *Id.*  As evidence of his rehabilitation, Mr. Martin notes that he has been motivated by his "genuine moral conversion" to "reject[] his former vocation and lifestyle."  Doc. 189 at 8.

If released, Mr. Martin plans to live with his mother and stepfather in North Carolina.  *Id.* at 10–11; Doc. 191 at 1.  The probation office conducted a home assessment and found it to be an acceptable residence.  Doc. 191 at 1.  Mr. Martin has a job offer from his stepfather's employer to be a commercial concrete laborer, and he has transportation to and from the job.  Doc. 189 at 11, 29, 42.  He has a supportive

---

[4] Mr. Martin entered federal custody on March 28, 2012, after completing a term of imprisonment in state custody for his previous state conviction.  Doc. 193 at 4 n.2.

community of friends and family willing to help him upon his reentry, many of whom

submitted letters on his behalf. *See id.* at 9–11; 18–30.

## IV.    Compassionate Release Standard

Courts do not have unfettered jurisdiction or discretion to modify criminal

sentences. *See United States v. Goodwyn*, 596 F.3d 233, 235 (4th Cir. 2010) ("The law

closely guards the finality of criminal sentences against judicial change of heart.")

(cleaned up).  A court may modify a sentence only when a provision in the Federal Rules

of Criminal Procedure or a statute expressly permits. *See* 18 U.S.C. § 3582(c); *United

States v. Jenkins*, 22 F.4th 162, 169 (4th Cir. 2021).  Section 3582(c)(1)(A), often

colloquially if somewhat inaccurately called the "compassionate release" provision, is

one such statutory provision. *See Jenkins*, 22 F.4th at 169.

For a sentence reduction under § 3582(c)(1)(A) to be appropriate, the movant must

satisfy the administrative exhaustion requirement when invoked by the government. *See

United States v. Muhammad*, 16 F.4th 126, 130 (4th Cir. 2021).  Section 3582(c)(1)(A)

also requires that extraordinary and compelling reasons merit a reduction in sentence, that

the reduction is consistent with any applicable policy statements issued by the Sentencing

Commission, U.S.S.G. § 1B1.13, and that the relevant § 3553(a) sentencing factors do

not counsel against early release. *See United States v. Mangarella*, 57 F.4th 197, 203 (4th

Cir. 2023); *United States v. High*, 997 F.3d 181, 185–86 (4th Cir. 2021).  Even if a court

finds extraordinary and compelling reasons support release, in its discretion, it may deny

a defendant's motion after balancing the applicable § 3553(a) factors. *High*, 997 F.3d at

186.

8

Effective November 1, 2023, the U.S. Sentencing Commission amended its policy statement to cover motions for sentence reduction filed by defendants and to expand the list of extraordinary and compelling reasons sufficient to support such a motion under § 3582(c)(1)(A). U.S.S.G. § 1B1.13. As is relevant here, the new policy statement authorizes a finding of extraordinary and compelling reasons if: (1) the defendant is serving an unusually long sentence; (2) the defendant has served at least ten years of the sentence; and (3) an intervening change in law has produced a "gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed." U.S.S.G. § 1B1.13(b)(6). In the Fourth Circuit, an intervening change in law can be an extraordinary and compelling circumstance even if it is not retroactive. *United States v. McCoy*, 981 F.3d 271, 287–88 (4th Cir. 2020); *United States v. Davis*, 99 F.4th 647, 658 (4th Cir. 2024) (reaffirming *McCoy* after the policy statement and holding that "[n]onretroactive changes in law remain relevant when a court has to decide when and how to modify a sentence.").[5]

The policy statement also permits a court to find extraordinary and compelling circumstances for "any other circumstance or combination of circumstances that . . . are similar in gravity" to the first four reasons listed in the policy statement. U.S.S.G. § 1B1.13(b)(5). But the policy statement makes clear that this provision is not available to consider a change in the law. U.S.S.G. § 1B1.13(c) ("Except as provided in subsection

---

[5] Other courts disagree, concluding that nonretroactive changes in law cannot be the basis for a finding of an extraordinary and compelling circumstance. *See, e.g.*, *United States v. Rutherford*, 120 F.4th 360, 363 (3d Cir. 2024); *United States v. Austin*, 125 F.4th 688, 693 (5th Cir. 2025); *United States v. Black*, 131 F.4th 542, 546 (7th Cir. 2025).

(b)(6), a change in the law . . . shall not be considered for purposes of determining whether an extraordinary and compelling reason exists under this policy statement.").

## V.   The First Step Act Changes the Law for Stacked § 924(c) Convictions

Mr. Martin pled guilty to two counts of brandishing a firearm in connection with a crime of violence under § 924(c)(1)(A)(ii).  Doc. 41 at ¶¶ 1–2.  As briefly summarized *supra*, Congress made a significant change in the law when, in 2018, it passed the First Step Act.  As is relevant here, the First Step Act amended § 924(c) so that the 25-year mandatory minimum for a subsequent § 924(c) offense can only be imposed if the offense occurs after the conviction for the first offense is final; for a subsequent § 924(c)(1)(A)(ii) offense committed before the first § 924(c) conviction becomes final, the First Step Act requires a consecutive sentence of at least seven years.  § 403(a), 132 Stat. at 5221–22; 18 U.S.C. § 924(c); *Jordan*, 952 F.3d at 171 (4th Cir. 2020).  These statutory changes do not apply retroactively.  *Jordan*, 952 F.3d at 174.

Mr. Martin committed the offense underlying his first § 924(c) conviction in July 2010, and he committed the offense underlying his second § 924(c) conviction in August 2010.  Doc. 29 at 2, 6; Doc. 152 at ¶¶ 14, 17.  He pled guilty to both offenses on the same date, August 8, 2011.  Minute Entry 08/08/2011.  If convicted and sentenced only for these two crimes under today's laws, Mr. Martin would be subject to a seven-year mandatory minimum sentence on each § 924(c) conviction to run consecutively to each other.  In other words, the statutory minimum for both crimes would be 14 years, not 32 years.  The statutory maximum of life is not affected, since the statute, both then and now, does not contain a statutory maximum.  18 U.S.C. § 924(c); Doc. 152 at ¶ 45.

10

## VI. Discussion

### A. Exhaustion

Mr. Martin says he has exhausted his administrative options, Doc. 189 at 4, and the government does not contend otherwise. *See* Doc. 194; *see also Muhammad*, 16 F.4th at 130 (holding that courts should not address the exhaustion requirement if it is not invoked by the government).

### B. Extraordinary and Compelling Circumstances

As is relevant here, extraordinary and compelling circumstances exist when the defendant has served over ten years, the sentence he is serving is unusually long, and there has been an intervening change in law that has produced a gross disparity between the sentence being served and the sentence likely to be imposed if sentenced today. U.S.S.G. § 1B1.13(b)(6). Mr. Martin has spent about 13 years in federal custody. Doc. 194-1 at 4 (listing over 12 years 8 months served in December 2024). This is well over the 10-year minimum required under § 1B1.13(b)(6).

The policy statement does not define what constitutes an "unusually long sentence," nor does it define a "gross disparity." Both questions are factual and require comparison to baselines that may be difficult to ascertain. Courts determine an appropriate sentence based on a myriad of factors that vary from case to case, making it hard to know what a "usual" sentence is. Without knowing the range of what is "usual," one cannot tell if a sentence is "unusual." Similarly, determining the sentence likely to be imposed now, against which one determines whether there is a "gross disparity," is not necessarily straightforward. Recalculating someone's guideline range or mandatory

11

minimum does not tell the whole story. It does not take into account, for example, the possibility that the plea agreement would have been different or that the court would impose an above-guidelines sentence.

Neither party has provided helpful evidentiary support for what a "usual" sentence would be for three armed robberies and one attempted armed robbery, but the government does not dispute that Mr. Martin's sentence is unusually long. Case law in this circuit tends to support that position. *See, e.g.*, *United States v. Howard*, No. 13-CR-629, 2024 WL 112010, at *1, *18 (D. Md. Jan. 10, 2024) (granting sentence reduction to 214 months where defendant participated in at least seven armed robberies); *United States v. Walker*, No. 15-CR-49, 2024 WL 1680025, at *10 (E.D. Va. Apr. 18, 2024) (finding "188-month sentence is appropriate" in case where defendant committed three armed carjackings and one robbery); *United States v. Marzouk*, No. 15-CR-52, 2024 WL 4830579, at *10 (E.D. Va. Nov. 19, 2024) (stating "172-month sentence is appropriate" in case where defendant committed four armed robberies).[6] In light of the specific facts of this case and the government's concession, the Court is satisfied that Mr. Martin's sentence is unusually long for the crimes of conviction.[7]

---

[6] The Court also consulted resources from the Sentencing Commission, but it is difficult to drill down with precision. The resources did tend to indicate that Mr. Martin's sentence is unusually long, at least by a year or two.

[7] Courts have taken different approaches to determine if a sentence is unusually long. *See United States v. Nelson*, No. 10-CR-350, 2025 WL 309039, at *3, n.1 (E.D.N.C. Jan. 27, 2025). At least one court has considered a sentence "unusually long" if it is significantly longer than the average of all federal sentences in a given year, *Howard*, 2024 WL 112010, at *15, but that is not a sensible approach. It ignores the fact that longer sentences are appropriate for more serious crimes. The Court understands the evaluation of whether a sentence is "unusually long" to be in

12

The next requirement is a "gross disparity" between the sentence being served and the sentence likely to be imposed at the time the motion was filed. U.S.S.G. § 1B1.13(b)(6). Here, there is a great deal of uncertainty about the term of incarceration Mr. Martin would receive if he were sentenced today. The plea agreement Mr. Martin received was largely driven by the statutory minimums, and with different statutory minimums now, it is overwhelmingly likely that the government would not have offered the same plea agreement.

Even if the government offered the same plea agreement, a minimum sentence is not a sentence "likely to be imposed" if Mr. Martin was sentenced today. U.S.S.G. § 1B1.13(b)(6). When a convicted felon commits three armed robberies and one attempted armed robbery, all while brandishing a rifle, a ten-and-a-half-year sentence[8] would not, in this Court's judgment, be sufficient to meet the goals of the sentencing factors, even considering the defendant's substantial assistance and mitigating circumstances. *See infra* at 17 (discussing defendant's relative youth). On the other end of the spectrum, it is also unlikely that a different plea agreement would have called for him to plead guilty to all three brandishing counts,[9] plus the robberies and attempted

---

comparison to other sentences imposed for the same crime. At a minimum, it should be longer than at least two-thirds of the sentences imposed for similar crimes, in light of the court's "wellspring of historical experience." *See United States v Lawson*, 128 F.4th 243, 250 (4th Cir. 2025).

[8] This sentence is the 14-year term reduced by 25%.

[9] Mr. Martin was originally charged with four brandishing counts, but one of the brandishing charges that was dismissed as part of his plea agreement could not be brought today. That § 924(c) charge was based on attempted Hobbs Act robbery, which the Supreme Court has since

robberies. It is common practice in this district for the government to offer plea agreements dismissing charges when, as here, the defendant is facing many counts.

The Court will not repeat here all its machinations as it struggled with determining the "likely" sentence. The Court used its extensive experience in criminal sentencing to determine a likely sentence. *See United States v. Lawson*, 128 F.4th 243, 250 (4th Cir. 2025). Based on its experience, the Court concludes that a likely sentence for these crimes would be somewhere around 20 or 21years, before taking into account Mr. Martin's substantial assistance. With that assistance, his sentence would be approximately 15 years. The question therefore becomes whether there is a gross disparity between the 24-year sentence he received and the approximately 15-year sentence he would likely receive today.

To decide whether a sentencing disparity rises to the level of a gross disparity, [10] courts in this circuit consider both the absolute length of the disparity and the length of the disparity relative to the overall sentence. In some situations, a disparity of 21 months may be enough to constitute a gross disparity, *see Howard*, 2024 WL 112010, at *16–17 (holding that a 21-month disparity is a gross disparity in the context of the original 235-month sentence), but in other situations, a disparity of 30 years may not be a gross disparity. *United States v. Dire*, No. 10-CR-56, 749 F. Supp. 3d 620, 631–33 (E.D. Va.

---

held cannot support a § 924(c) conviction. *See United States v. Taylor*, 596 U.S. 845, 860 (2022).

[10] As noted *supra*, the policy statement does not define "gross disparity." Black's Law Dictionary defines "gross" as "[c]onspicuous by reason of size or other attention-getting qualities; esp., obvious by reason of magnitude." *Gross*, Black's Law Dictionary (12th ed. 2024).

14

2024) (holding that a disparity between a sentence of life plus 80 years and life plus 50 years is not a gross disparity).

The disparity in Mr. Martin's case is similar to those other courts in this circuit have found to be gross disparities. For example, since the policy statement was enacted, courts in this circuit have found that a disparity between a 235-month sentence and a 214-month sentence is a gross disparity, *Howard*, 2024 WL 112010, at *16–17; a disparity between a 180-month sentence and a 130-month sentence is a gross disparity, *United States v. Stewart*, No. 13-CR-19, 2024 WL 4860809, at *11 (W.D. Va. Nov. 21, 2024); a disparity between a 180-month sentence and a 144-month sentence is a gross disparity, *White v. United States*, No. 12-CR-82, 2024 WL 3030652, at *5 (E.D. Va. June 17, 2024); and a disparity between a 285-month sentence and a 180-month sentence is a gross disparity. *United States v. Tronco-Ramirez*, No. 10-CR-28, 2024 WL 4713576, at *10 (W.D. Va. Nov. 6, 2024). In its discretion and based on the circumstances of Mr. Martin's case, the Court finds that there is a gross disparity between Mr. Martin's 288-month sentence and the sentence of approximately 180 months he would likely receive today.

Mr. Martin satisfies all three requirements of an unusually long sentence under § 1B1.13(b)(6). He has demonstrated an extraordinary and compelling reason for a sentence reduction.

Relying on § 1B1.13(b)(5), Mr. Martin also asks the Court to consider his rehabilitation and the conditions of his confinement as factors in determining whether there are extraordinary and compelling circumstances. Doc. 189 at 5–7; Doc. 193 at 10–

15

11. The Court need not consider these arguments given its finding under § 1B1.13(b)(6). The Court will consider those factors as part of its § 3553(a) analysis.

## VII. § 3553(a) Factors

The existence of extraordinary and compelling reasons is not enough, by itself, to support a sentence reduction; courts must still consider whether a sentence reduction is appropriate in light of the applicable sentencing factors in § 3553(a). *United States v. Malone*, 57 F.4th 167, 176 (4th Cir. 2023). Those factors "include the nature and circumstances of the offense; the defendant's history and characteristics; the need to provide just punishment, afford adequate deterrence, protect the public, and support rehabilitation; the kinds of sentences available; and the need to avoid unwarranted sentence disparities." *United States v. Moody*, 115 F.4th 304, 315 (4th Cir. 2024). District courts enjoy broad discretion in evaluating these factors. *Id.*

The § 3553(a) factors support a reduction in Mr. Martin's sentence to 180 months, or 15 years. The underlying offenses are serious and violent, and they merit a substantial sentence. In a month-long spree, Mr. Martin committed three armed robberies and one attempted armed robbery, threatening multiple people with an assault rifle and putting their lives at risk, Doc. 152 at ¶¶ 14–17, all while he was on probation for a felony. *Id.* at ¶¶ 30–32. No one was physically injured during the robberies or attempted robbery, *id.* at ¶ 26, but the conduct was serious, violent, and dangerous. A sentence of 180 months is still quite lengthy and is sufficient to reflect the seriousness of these crimes and provide just punishment.

16

A sentence above 180 months would not appropriately account for Mr. Martin's age, commitment to rehabilitation and education, and minimal disciplinary record. Mr. Martin's criminal history was not long, and both of his prior offenses occurred when he was 17 years old. *Id.* at ¶¶ 30–31. Before his arrest for these offenses, Mr. Martin had never served a prison sentence. *See id.*

Mr. Martin was 19 years old when he committed these offenses. His age is a mitigating factor in two ways: he was young at the time he committed the offenses, and he is now in his 30's, making him less likely to reoffend. *See id.* at 2; *see also* U.S.S.G. § 5H1.1 ("The age-crime curve, one of the most consistent findings in criminology, demonstrates that criminal behavior tends to decrease with age.").

As the Court stated in its previous order, "Mr. Martin has an impressive record of rehabilitation." Doc. 182 at 10. Since his first motion for compassionate release in 2021, Mr. Martin has avoided any new disciplinary infractions. While serving his sentence, he has only received one minor disciplinary infraction, well over a decade ago. Doc. 191 at 2. Since his first motion, he has taken 57 more hours of BOP-administered courses for a total of 528 hours. *Id.* at 3; Doc. 194-2; *see also* Doc. 182 at 10–11 (listing 471 hours of courses at the time of his last motion). He has continued to take college-level courses at Ohio University. Doc. 193-1.

Mr. Martin has held many work assignments in the BOP throughout his incarceration, and he has maintained his work assignment since his first motion. Doc. 191 at 2; Doc. 189 at 10. He received a positive reference letter from the Chaplain at FCI Estill who states that he is "confident that Mr. Martin has put his offending behavior

17

behind him and would pose little to no risk of recidivism." Doc. 189 at 17. According to the BOP's classifications, he presents a "low risk" of recidivism. *Id.* at 33.

Mr. Martin has further developed his plan for his release. He has a job offer to work with his stepfather's employer, *id.* at 29, 42, and he will live with his mother and stepfather. Doc. 191 at 1. Mr. Martin has the support of several family members and friends, many of whom have agreed to help him as needed with his reentry. *See* Doc. 189 at 18–30. Additionally, a reduction of Mr. Martin's sentence would not leave him unsupervised, as he would still have to serve a term of supervised release.

The Court is also mindful that Mr. Martin served part of his sentence under harsher conditions than expected because of the COVID-19 pandemic. *Id.* at 5–6; *see also Howard*, 2024 WL 112010, at *19 ("[T]he punitive effect of a sentence served during the pandemic is greater than that of a sentence served under normal conditions.").

Having reviewed the entirety of the record, the Court will reduce Mr. Martin's sentence to a term of 180 months. That is 240 months reduced by 60 months (25%) because of his substantial assistance. The Court finds that a sentence of 180 months followed by the five-year term of supervised release is sufficient but not greater than necessary to meet the statutory sentencing goals.

## VIII. Supervised Release

As part of a sentence reduction, courts can impose additional conditions of supervised release. 18 U.S.C. § 3582(c)(1)(A). The Court has reviewed the standard conditions of supervised release originally imposed, Doc. 86 at 3, and finds it appropriate to update those conditions to those currently used in this district, as attached to this Order.

18

The changes from his original conditions are minimal, and consistency with current conditions eases the burden on the Probation Office without increasing the burden on Mr. Martin. Each of those requirements is reasonable and appropriate, given Mr. Martin's history and characteristics. They are basic minimum conditions necessary for adequate supervision in his case.

Mr. Martin must still comply with the special conditions of supervised release included in the original judgment. Doc. 86 at 4. These cover such requirements as substance abuse testing and treatment, providing financial information to the probation officer, mental health treatment, and warrantless searches. *Id.* These conditions of supervised release are all connected to his history and characteristics and remain appropriate. No additional requirements are needed.

## IX. Conclusion

Mr. Martin meets the conditions for a § 3582(c)(1)(A) sentence reduction because he has served ten years of an unusually long sentence and there is a gross disparity between the sentence he received in 2012 and the sentence he would likely receive today. This is an extraordinary and compelling circumstance under the applicable policy statement and Fourth Circuit law, and a sentence reduction is consistent with the § 3553(a) factors. His sentence will be reduced to 180 months imprisonment with five years of supervised release, which will facilitate his rehabilitation and protect the public.

19

It is **ORDERED** that:

1. The defendant's motion for compassionate release, Doc. 189, is **GRANTED in part**, and his sentence is reduced to 180 months total imprisonment (90 months on Count 3 and 90 months on Count 10 to run consecutively).

2. Upon release, the defendant Gabriel Martin **SHALL COMPLY** with the standard conditions of supervised release attached hereto and the special conditions of supervised release as imposed in the original judgment at Doc. 86.  The term of supervised release remains five years.

3. All other provisions of the original judgment remain in place.

This the 11th day of April, 2025.

_____
UNITED STATES DISTRICT JUDGE

# United States Sentencing Guidelines

## § 5D1.3(c)  Standard Conditions of Supervised Release

### (c) "Standard" Conditions (Policy Statement)

The following "standard" conditions are recommended for supervised release. Several of the conditions are expansions of the conditions required by statute:

(1) The defendant shall report to the probation office in the federal judicial district where he or she is authorized to reside within 72 hours of release from imprisonment, unless the probation officer instructs the defendant to report to a different probation office or within a different time frame.

(2) After initially reporting to the probation office, the defendant will receive instructions from the court or the probation officer about how and when to report to the probation officer, and the defendant shall report to the probation officer as instructed.

(3) The defendant shall not knowingly leave the federal judicial district where he or she is authorized to reside without first getting permission from the court or the probation officer.

(4) The defendant shall answer truthfully the questions asked by the probation officer.

(5) The defendant shall live at a place approved by the probation officer. If the defendant plans to change where he or she lives or anything about his or her living arrangements (such as the people the defendant lives with), the defendant shall notify the probation officer at least 10 days before the change. If notifying the probation officer at least 10 days in advance is not possible due to unanticipated circumstances, the defendant shall notify the probation officer within 72 hours of becoming aware of a change or expected change.

(6) The defendant shall allow the probation officer to visit the defendant at any time at his or her home or elsewhere, and the defendant shall permit the probation officer to take any items prohibited by the conditions of the defendant's supervision that he or she observes in plain view.

(7) The defendant shall work full time (at least 30 hours per week) at a lawful type of employment, unless the probation officer excuses the defendant from doing so. If the defendant does not have full-time employment he or she shall try to find full-time employment, unless the probation officer excuses the defendant from doing so. If the defendant plans to change where the defendant works or anything about his or her work (such as the position or the job responsibilities), the defendant shall notify the probation officer at least 10 days before the change. If notifying the probation officer in advance is

not possible due to unanticipated circumstances, the defendant shall notify the probation officer within 72 hours of becoming aware of a change or expected change.

(8) The defendant shall not communicate or interact with someone the defendant knows is engaged in criminal activity. If the defendant knows someone has been convicted of a felony, the defendant shall not knowingly communicate or interact with that person without first getting the permission of the probation officer.

(9) If the defendant is arrested or questioned by a law enforcement officer, the defendant shall notify the probation officer within 72 hours.

(10) The defendant shall not own, possess, or have access to a firearm, ammunition, destructive device, or dangerous weapon (i.e., anything that was designed, or was modified for, the specific purpose of causing bodily injury or death to another person, such as nunchakus or tasers).

(11) The defendant shall not act or make any agreement with a law enforcement agency to act as a confidential human source or informant without first getting the permission of the court.

(12) If the probation officer determines that the defendant poses a risk to another person (including an organization), the probation officer may require the defendant to notify the person about the risk and the defendant shall comply with that instruction. The probation officer may contact the person and confirm that the defendant has notified the person about the risk.

(13) The defendant shall follow the instructions of the probation officer related to the conditions of supervision.